## GENERAL ELECTRIC CO. v. WEST ASHEVILLE IMP. CO.

### Ex parte CARRIER et al.

#### (Circuit Court, W. D. North Carolina. March 20, 1896.)

EQUITY PRACTICE — SUITS AGAINST CORPORATIONS — INTERVENTION BY STOCK-HOLDERS.

The charter of the .W. Co., a North Carolina corporation, was repealed by an act of the legislature, passed without the knowledge of the corporation or any of its members, and while it was solvent and a going concern. Pursuant to plans concerted at a meeting of the president and directors, a suit was instituted by a creditor for the winding up of the corporation, in which a receiver of the property of the corporation was appointed. Subsequently, several stockholders, including the president and secretary, petitioned for leave to intervene as parties, to protect their interests, alleging fraudulent dealing by the complainant, in derogation of the rights of the corporation and the petitioners, but not alleging that any request had been made to the directors of the corporation to raise the issues stated or protect the petitioners' rights. The Code of North Carolina (section 667) provides that corporations whose charters shall expire or be annulled shall, nevertheless, continue bodies corporate for three years, for the purpose of prosecuting and defending actions and winding up their affairs. *Held*, that the board of directors should have been applied to, to protect the stockholders' interests; and, in the absence of any allegation of the directors' neglect or refusal to do so, the individual stockholders should not be permitted to intervene.

C. M. Stedman, for General Electric Co.

Merrimon & Merrimon and John P. Arthur, for petitioners.

Before SIMONTON, Circuit Judge, and DICK, District Judge.

SIMONTON, Circuit Judge. This case comes up on a motion to vacate an order filed 14th January, 1896, permitting the petitioners and all other stockholders and creditors of the West Asheville Improvement Company to intervene pro interesse suo in the main cause, as defendants therein, with all the rights incidental thereto. It is proper to say that the motion is made by counsel with the permission granted to them by the judge who signed the order, and that without such permission it would not have been entertained.

The West Asheville Improvement Company was a corporation organized under the law of North Carolina. Some time about June or July of the past year, it was discovered that the legislature of North Carolina, at the session immediately preceding the discovery, had repealed the charter of the corporation. This discovery was a surprise to all parties interested in the corporation, and up to this time there seems to be a mystery connected with it. At the time of this repeal, the corporation was doing a large business, was in the enjoyment of a large and valuable property, owed a considerable debt, by way of mortgage securing outstanding bonds and a floating debt, but was by no means in an insolvent or even dangerous pecuniary condition. Called upon to meet this wholly unexpected emergency, a meeting of those who theretofore had been the president and directors of the corporation was called; and, after consultation with counsel, the proceedings in the main cause were instituted, the chief purpose and motive for which were the appointment

of a receiver to take charge of the assets and affairs of the late corporation. Receivers were appointed, and took charge, but no further steps were taken, the manifest desire being not to hasten progress until an opportunity was afforded of going before the legislature of North Carolina, and of obtaining a correction of an error if the repeal was the result of an error, or of a reconsideration of the action of the general assembly if the repeal was intentional. Pending this proceeding, the petition in question was filed. One of the petitioners, E. G. Carrier, was the president of the corporation before and up to the date of the repeal of its charter, and was present at and presided over the meeting called upon the discovery of the repeal above spoken of; and J. D. Carrier, another of the petitioners, was secretary of the corporation. The other petitioners are friends and relations of E. G. Carrier. The petition alleges acts of fraudulent dealing on the part of the complainant, in derogation of the rights and interests of the West Asheville Improvement Company and of the petitioners individually. It does not state that an approach has been made to the directors of the West Asheville Improvement Company, requesting that these issues be raised in the pending suit; nor does it allege any fraudulent conduct or partisan relation on the part of these directors; nor does it state any reason whatever for not applying to them for co-operation with the petitioners. It asks that they themselves be allowed to intervene and protect their own rights, in their own name. The order of the court now in question grants them this privilege, and extends it to all the other stockholders and creditors of the West Asheville Company.

As a general rule, the corporation represents all the shareholders in suits by a third party; and the directors control the action of the corporation. But if the directors are false to their duty, and there is danger that they will, from corrupt motives or blind obstinacy, abandon, neglect, or sacrifice the interests of the shareholders committed to their charge, then the courts of equity will permit stockholders to intervene for their own protection, and to seek and obtain the aid of the court. Bronson v. Railroad Co., 2 Wall. 302. But, in the absence of such misconduct on the part of the controlling authorities of the corporation, they will not be permitted to intervene. And for obvious reasons. If such privilege be accorded to one, it must be allowed to all. And so a case will be burdened by a number of parties, and be exposed constantly to abatement by death, change of relation, or circumstance of individuals, and justice be greatly impeded. The questions in every case are: Is the complaining stockholder remediless unless he represent his own interest? Is there danger of the commission of a flagrant wrong? If these questions be answered in the affirmative, he will be allowed to intervene, notwithstanding that the remedy is an extreme one, and should not be permitted without hesitation and caution.

The board of directors of the Asheville Improvement Company consisted of persons the majority of whom are men of great business experience and judgment, of unexceptionable character, and possessing public confidence. There is no charge or suspicion of charge that they have acted or would act treacherously to the trusts con-

fided to them. The petitioner E. G. Carrier is himself one of this board, and coincided in all the action taken, consenting to the filing of the answer of his corporation in the main cause. The learned counsel who represents the petitioner, in a clear and very forcible argument, contended that no application could be made to the directors for relief, because, in point of fact, there are no directors of the West Asheville Improvement Company, as the repeal of the charter extinguished the life of the corporation and of all of its agencies. But the dissolution of a corporation from any cause does not destroy its property or pay its debts. The franchise of conducting itself as a legal entity, may be, is lost. But the rights of creditors, the obligation of debtors, and the property of the shareholders, remain. And in the absence of statutory regulations, without the necessity for statutory regulations, the courts of equity take hold of and protect these interests. In North Carolina the wisdom of her legislature has provided for such an emergency. In the Code of 1883, which is a single act, read and passed in accordance with the constitution, and therefore speaking as of the date of its passage, in words de præsenti, is this provision (section 667):

"All corporations whose charters shall expire by their own limitation or shall be annulled by forfeiture or otherwise shall nevertheless be continued bodies corporate for the term of three years after the time when they have been so dissolved, for the purpose of prosecuting and defending actions by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property and to divide their capital stock; but not for the purpose of continuing the business for which such corporation may have been established."

The provisions of this section are free from any ambiguity. The mischief to be remedied was the confusion possibly resulting from the abrupt dissolution of the corporation from any cause. The plan adopted was the continuation of the corporate character solely for the purpose of winding up its affairs. It is urged with great ingenuity that this section became and was by the operation of law a part of the charter of this corporation, the West Asheville Improvement Company, and that, when its charter was repealed quoad hoc, this provision was repealed also. But the proposition is as unsound as it is ingenious. It is not a provision of the charter of the West Asheville Improvement Company, but a general provision of law applying to all corporations. The repeal of this particular charter does not repeal it pro tanto. Indeed, the repeal makes it applicable actively to this particular corporation, as a sort of statutory letters of administration; whereas before the repeal it was a passive provision, if one may so speak. This being the case, the corporate character is continued by the statute, especially for the very purpose of a suit of this nature. And this is a corporate act, especially provided for. And as all corporate acts must be effected by agents, and as the directors are the general agents of the corporation, the petitioners could and should have applied to them to raise the issues they now present.

It is contended, however, that Code N. C. § 668, has provided a mode in which a receiver can be appointed for a defunct corporation; and that, under the decisions of the supreme court of North Caro-

lina, this mode is the only one which can be pursued. But, as has been seen, courts of equity, in the exercise of their appropriate jurisdiction, can take charge of and wind up the affairs of corporations whose charters have ceased from any cause to exist. The jurisdiction of courts of the United States in equity is derived from the constitution and laws of the United States. It cannot be enlarged. Nor can it be diminished by the legislature of any state. Mississippi Mills v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75; Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936; Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342. In the case at bar, E. G. Carrier is the president of the corporation and the presiding officer of the board of directors. Surely, his representation would receive a respectful hearing, and his suggestions as to objections to the claim of the complainant will be listened to. At all events, until they are disregarded, the whole of the stockholders and creditors should not be made parties to this record. Under the circumstances in which the answer of the West Asheville Improvement Company was put in,— to meet but one emergency,—leave will be granted at any time to amend it so that complete justice can be done. If there be any cause of complaint against this complainant for its action towards the West Asheville Improvement Company, or a claim for affirmative relief because of this against it, a cross bill can be filed. If the amount due the complainant is in dispute, this can and will be examined into, and the correct sum ascertained in the necessary progress of the case. Before the affairs of this corporation can be wound up, each creditor and each stockholder must be called in to establish his claim. Coming in, they will have a right to dispute the conflicting claims. If the petitioners have any specific ground of complaint against the complainant for injury to their rights as individuals, each of them has a plain, adequate, and complete remedy at law. At all events, in the present stage the intervention is premature. If in the future development of the case, it should appear that there is danger that the rights of the petitioners, or any of them, are neglected or endangered, they may be allowed to become parties actively (compare Williams v. Morgan, 111 U. S., at pages 698, 699, 4 Sup. Ct. 638); or the pleadings can be so amended as to make them, or some one or more representatives of them, the parties to the record. The petition is dismissed, without prejudice.

DICK, District Judge. I have carefully read and considered the foregoing opinion, sent me by the circuit judge, and readily concur in the disposition made of the motion of petitioners.